NO. 07-05-0070-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JANUARY 26, 2007
_____

JOSEPH LEE MAXWELL, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 31ST DISTRICT COURT OF LIPSCOMB COUNTY;

NO. 1079; HONORABLE STEVEN R. EMMERT, JUDGE
_____

Before CAMPBELL, J., and BOYD and REAVIS, S.J.[1]

**OPINION**

Joseph Lee Maxwell appeals his conviction of the felony offense of aggravated robbery. He presents four issues assigning error to the trial court's failure to give statutory admonishments on his plea of guilty and two issues challenging the absence of a deadly weapon definition in the jury charge. The State has not filed a brief in reply. Finding the errors reflected in the record do not require reversal, we affirm the trial court's judgment.

_____

[1] John T. Boyd, Chief Justice (Ret.) and Don H. Reavis, Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

Appellant was charged by an indictment alleging he committed aggravated robbery by placing the victim in fear of injury or death and that he used or exhibited a deadly weapon, a knife. Through counsel he waived arraignment and entered a plea of not guilty. He also elected to have any punishment assessed by the jury. At trial, however, appellant pled guilty before the jury, but sought a bifurcated trial with a jury verdict on guilt before the presentation of evidence on punishment.[2] In conformity with appellant's request, the State presented the testimony of the victim and a deputy sheriff who investigated the offense. The evidence showed appellant entered a convenience store and selected a package of cigarettes. When the clerk asked how he was going to pay for them he brandished a pocket knife in front of her and demanded money from the registers. The jury returned a verdict of guilty.

The State's only witness on punishment was the victim. During his testimony on punishment, appellant acknowledged his guilt of the indicted offense, but testified also to his lack of prior criminal history and his motive to commit a "small crime" to avoid a commitment he made to serve in the Navy. He also presented testimony from his father, a family friend and the county sheriff. The jury assessed punishment at five years confinement and a $5,000 fine. It also found appellant used or exhibited a deadly weapon. The trial court rendered judgment in conformity with the jury's verdicts.

---

[2] Asking the court to adopt his requested procedure, appellant's trial counsel told the court, "I have done this in the past, we pled guilty, the jury has gone back, quickly, found a guilty verdict and then we go directly into the punishment phase. And I think from a defendant's point of view, that allows a jury to have the satisfaction of finding him guilty before they decide what they are going to do with him."

Appellant's first four issues are based on the trial court's failure to provide the admonitions required by article 26.13 of the Code of Criminal Procedure. As relevant here that statute requires that, before a trial judge accepts a plea of guilty or nolo contendre, the judge admonish the defendant of the range of punishment and the possible effects of the plea on defendants who are not citizens. Tex. Code Crim. Proc. Ann. art. 26.13(a)(1), (4) (Vernon Supp. 2006). We accept appellant's contention that the court failed to give the admonishments. Although the court's judgment recites that appellant "pleaded guilty, being admonished of the consequences," no written or oral admonishments with regard to the guilty plea appear in the record.[3] The court's failure to give the statutory admonishments was error.[4]

After the jury was seated, the indictment was read and appellant pled guilty. As noted, the State then put on evidence of his guilt. A charge on guilt/innocence, to which there were no objections, was prepared and read to the jury. Counsel presented argument, appellant's counsel acknowledging that "[h]e has admitted . . . guilt in this case," but asking the jury to "make sure the State has proved everything . . . ." The jury returned

---

[3] Neither does the reporter's record suggest any part of the proceeding was not transcribed.

[4] Under the procedure employed, it might be said that the trial court did not "accept" appellant's plea of guilty. The record shows that after receiving the plea, the court immediately began hearing the State's evidence on guilt/innocence. The court did not instruct the jury to find appellant guilty, but the court's comments to the jury make clear that the court expected the jury to render a guilty verdict. Under such circumstances, the proper procedure is that reflected in *Fairfield v. State*, 610 S.W.2d 771, 776-77 (Tex.Crim.App. 1981), and other cases, by which the defendant is admonished outside the presence of the jury.

a verdict of guilty, and no complaint is raised on appeal concerning the sufficiency of the State's evidence to support the verdict.

The admonishments required by article 26.13 are not constitutionally required but are designed to help the trial court ensure that the waiver of constitutional rights resulting from a plea of guilty is made knowingly and voluntarily. *Anderson v. State*, 182 S.W.3d 914, 917-18 (Tex.Crim.App. 2006); *Aguirre-Mata v. State*, 125 S.W.3d 473, 476 (Tex. Crim.App. 2003) (*Aguirre-Mata II*). Waiver of a constitutional right which is not voluntary or is made without knowledge of the consequences violates due process. *Boykin v. Alabama*, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Such constitutional errors are reviewed under the standard set out in Rule of Appellate Procedure 44.2(a). Where a defendant complains only of the failure to follow the dictates of the statute, we must apply Rule 44.2(b) and determine if the error affects a substantial right. *Aguirre-Mata v. State,* 992 S.W.2d 495, 499 (Tex.Crim.App. 1999) (*Aguirre-Mata I*). Appellant has presented separate complaints of the violation of article 26.13 and violation of his due process rights.

Appellant acknowledges authority holding his knowledge of the range of punishment need not come from the judge to show he understood that consequence of his plea. *See Aguirre-Mata II*, 125 S.W.3d at 476-77; *Burnett v. State*, 88 S.W.3d 633, 639 (Tex.Crim.App. 2002); *Gamble v. State*, 199 S.W.3d 619, 622 (Tex.App.--Waco 2006, no pet.). During voir dire both the prosecutor and appellant's counsel correctly recited the applicable range of punishment. As in *Burnett*, appellant's guilty plea was not given until

4

the conclusion of voir dire. Appellant seeks to distinguish *Burnett* on the basis that, there, other required admonitions were given. We cannot agree that fact provides any distinction from the analysis on this issue in cases such as *Burnett* and *Aguirre-Mata II*. His argument that courts should not presume a defendant was aware of and understood counsel's statements to the jury explaining the range of punishment is an invitation to disregard recent authority of the Court of Criminal Appeals. This we may not do. Additionally, the record fails to hint at any reason to question appellant's understanding here. Appellant's own testimony revealed he is an articulate high school graduate who had been accepted into a Texas state university, possessed no physical impairment on which he could rely to avoid military service and "did real, real well" on a nuclear physics examination given by a Navy recruiter. This evidence indicates appellant was capable of perceiving and understanding the description of the range of punishment stated by the prosecutor and his counsel.

Having reviewed the entire record, we find nothing that shows he was unaware of the consequences of his plea, or that he was misled or harmed. *Aguirre-Mata II*, 125 S.W.3d at 476-77. We conclude the trial court's error of failing to show on the record it complied with article 26.13 by admonishing appellant on the range of punishment did not affect a substantial right and was therefore harmless. *Id*.; Tex. R. App. P. 44.2(b).

With respect to appellant's due process argument, we note that unlike the record in *Boykin*, 395 U.S. at 240, the record is not silent concerning appellant's reasons for pleading guilty before the jury but sheds considerable light on that subject. In addition to

5

his comments to the trial judge concerning the bifurcated procedure he was requesting, as he began voir dire, appellant's trial counsel told the panel that "there are several reasons for [his client's plea of guilty]. The truth, that is the main one. And that's what we are here to lay out before you. We think if we are asking you to do something seriously we better start from the start being straight. The other reason is we don't want to waste your time. We know it's valuable and we appreciate your time. So, with that out of the way . . . ." Counsel then continued, devoting almost all the rest of his voir dire to inquiries concerning sentencing, clearly attempting to prepare the prospective jurors to recommend community supervision for his client.

Later, during appellant's testimony on punishment, he and his counsel had this exchange, concerning his actions toward police after his arrest:

Q:   During that time [after the arrest], did you cooperate with the police?

A:   Yes, sir.

Q:   You told them exactly what you had done?

A:   Yes, sir.

Q:   Admitted every part of the offense?

A:   Yes, sir.

Q:   Just like you have done today?

6

A:     Yes, sir.

Appellant later responded, "Yes, sir," to his counsel's question "You're pleading guilty because that was true?"  Also, from the witness stand, appellant apologized to the victim, and, in a statement occupying some three-quarters of a page of the record, addressed his counsel's question asking why the jury should "take a chance on you," through community supervision.  Appellant also introduced as punishment evidence his handwritten statement written in jail.  Through these instances in the record, and others, appellant presented himself to the jury as a thoughtful young man who acknowledged a serious mistake borne of poor judgment but was a good candidate for a "second chance."[5]

Further, by virtue of the procedure utilized in appellant's trial, his plea of guilty before the jury did not involve waiver of all the constitutional rights a criminal defendant typically waives by pleading guilty.  See *Aguirre-Mata II*, 125 S.W.3d at 475 n.6 (constitutional rights waived by a guilty plea are privilege against compulsory self-incrimination, and rights to counsel, trial by jury[6] and confrontation of accusers, citing *Boykin*, 395 U.S. at 243).  Here, appellant was represented by counsel throughout, was adjudged guilty by the jury and cross-examined the State's witnesses.

Under the circumstances presented, we find the trial court's failure to make a record clearly reflecting admonishment of appellant on the range of punishment did not equate

---

[5] Appellant's strategy met with some success. Although they did not recommend community supervision, the jury sentenced appellant to the shortest allowable term of incarceration.

[6] Nothing in the record shows a waiver of jury trial. *See* Tex. Code Crim. Proc. Ann. art. 1.13 and 1.15 (Vernon 2005) (stating manner of waiver of jury trial).

to a denial of due process. *Boykin*, 395 U.S. at 240. His first and second issues are overruled.

Appellant's third and fourth issues complain of the trial court's failure to admonish him of the immigration consequences of conviction. Courts have held such an error is harmless when the record shows that the defendant is a citizen of the United States. *Anderson*, 182 S.W.3d at 919; *Cain v. State*, 947 S.W.2d 262 (Tex.Crim.App.1997). Appellant's description of the record as "completely silent" as to his citizenship is inaccurate. It contains an affidavit of financial status signed by appellant which recites his place of birth as Lubbock, Texas.[7] Because the record affirmatively shows he is a citizen, we overrule appellant's third and fourth issues.

Appellant's final two issues complain of the trial court's failure to define deadly weapon in the jury charge on guilt or innocence.[8] The definitions section of the charge omitted the statutory definition of deadly weapon, and the application paragraph can be read to define a knife as a deadly weapon. Appellant concedes the complaints were not preserved for review by any objection to the trial court and reversal is required only if they caused harm so egregious as to deprive appellant of a fair trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). The harm must be actual, not just theoretical. *Id.* at 174; *Cormier v. State*, 955 S.W.2d 161, 164 (Tex.App.–Austin 1997, no pet.). To

---

[7] *See U.S. Const. amend. XIV,* § 1; 8 U.S.C. § 1433(a) (each declaring persons born in the United States as citizens).

[8] We note that appellant's issues complaining of the jury charge on guilt/innocence treat his conviction as one based on the jury verdict, a view inconsistent with his first four issues treating it as based on his guilty plea. We nonetheless address the issues.

evaluate the actual harm caused by the charge error, we review the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information shown by the record. *Almanza*, 686 S.W.2d at 171.

Appellant cites us to *Blanson v. State*, 107 S.W.3d 103 (Tex.App.–Texarkana 2003, no pet.), in which the court found egregious harm from a charge that contained the instruction, "[a] knife is a deadly weapon." *Id*. at 105. Here, though, we cannot ignore appellant's plea of guilty before the jury. His plea established the facts alleged in the indictment, which included the allegation appellant used or exhibited a deadly weapon. *See Fairfield*, 610 S.W.2d at 776-77; Tex. Pen. Code Ann. § 29.03(a) (Vernon 2003) (defining aggravated robbery). Too, unlike in *Blanson*, in which the nature of the unopened knife as a deadly weapon was a "central issue," *id*. at 106, the characterization of the knife as a deadly weapon was not a contested issue at appellant's trial. Further, the knife was before the jury. The record shows it was a folding or pocket knife, about four inches long when closed and with a locking, curved serrated blade about two-and-three-quarters inches long. The investigating sheriff's deputy testified without objection that the knife was capable of causing serious bodily injury or death. *See* Tex. Pen. Code Ann. § 1.07(17) (Vernon Supp. 2006) (defining deadly weapon). We do not agree the record reflects

egregious actual harm flowing from the errors in the jury charge.[9] We overrule appellant's fifth and sixth issues.

Finding no reversible error in the judgment of the trial court, we affirm the judgment.

James T. Campbell
Justice

Do not publish.

---

[9] Our conclusion appellant suffered no egregious harm from the charge error also means his admission of guilt during punishment testimony bars his complaint, under *DeGarmo v. State*, 691 S.W.2d 657 (Tex.Crim.App. 1985). *Kelley v. State*, 22 S.W.3d 628, 631 (Tex.App.--Fort Worth 2000, pet. ref'd) (admission of guilt at punishment waived charge error).