TYSON, Judge.
 

 *456
 
 Jackson Cain Whisenant ("Defendant") appeals from judgments entered upon return of the jury's verdicts finding him guilty of robbery with a dangerous weapon, possession of methamphetamine, and simple assault. We find no error in part, and dismiss without prejudice in part.
 

 *457
 

 I. Factual Background
 

 At approximately 2:30 p.m. on 20 December 2014 in Waynesville, North Carolina, Kmart loss prevention associate William Pate observed a male, later identified as Defendant,
 
 *124
 
 scanning the jewelry section inside the store. Mr. Pate observed Defendant take two separate watches and place them inside his pants, and conceal two necklaces under his shirt. The items had a total retail value of $95.95.
 

 Defendant walked away from the jewelry section and past the registers without paying for the merchandise. Mr. Pate followed Defendant outside and asked him to return to the foyer of the Kmart.
 

 After Mr. Pate questioned Defendant about taking the jewelry, Defendant stated, "I don't have anything on me" and "F you. I don't have anything. I'm leaving." During this confrontation, Defendant repeatedly placed his hands into his pockets. Mr. Pate testified he saw a knife in Defendant's pocket. When Defendant's hand went to the knife in his pocket, Mr. Pate told Defendant to "get his hands off his knife."
 

 Mr. Pate testified Defendant attempted to force his way out of the Kmart foyer and pulled the unopened knife out of his pocket. Immediately, Mr. Pate grabbed Defendant's hand and wrestled the closed knife away from him. Defendant repeatedly said, "I will kill you" to Mr. Pate.
 

 Gregory Winsell, another Kmart security officer, approached to assist Mr. Pate. At this point, Mr. Pate pushed Defendant out of the foyer. Defendant walked into the parking lot and then returned and sprayed the men with pepper spray. The spray hit Mr. Winsell directly in the face.
 

 Defendant fled across the parking lot to a Little Caesars pizza shop. James Messer, an employee of Little Caesars, had parked his truck beside the pizza shop. Mr. Messer saw Defendant bend down and toss something underneath his truck. The police found the items stolen from Kmart underneath the truck, as well as 2.58 grams of methamphetamine hidden between the windshield and hood. Defendant was arrested and later indicted for robbery with a dangerous weapon, possession with intent to manufacture, sell, or deliver methamphetamine, and three counts of simple assault.
 

 Immediately prior to his trial on 13 July 2015, Defendant's attorney moved for a continuance due to his inability to prepare the case for trial. The trial court denied the motion and the case proceeded to trial. The jury found Defendant guilty on all counts. Defendant appeals from the judgment entered thereon.
 

 *458
 

 II. Issues
 

 Defendant argues the trial court erred by denying his motion to dismiss the robbery with a dangerous weapon charge because (1) the weapon was unopened, and (2) the State failed to establish Mr. Pate's life was in danger or threatened.
 

 Defendant also argues his appointed counsel was not adequately prepared and the trial court's denial of his motion to continue and for substitute counsel violated his Sixth Amendment right to counsel.
 

 III. Robbery With a Dangerous Weapon
 

 A. Standard of Review
 

 When ruling upon a defendant's motion to dismiss, the trial court determines whether substantial evidence exists of: (1) each essential element of the offense charged, and (2) whether defendant is the perpetrator of the crime.
 
 State v. Scott
 
 ,
 
 356 N.C. 591
 
 , 595,
 
 573 S.E.2d 866
 
 , 868 (2002). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith,
 

 300 N.C. 71
 
 , 78,
 
 265 S.E.2d 164
 
 , 169 (1980).
 

 Upon a motion to dismiss, the court must review the evidence in the light most favorable to the State to determine whether substantial evidence was present of each element of the offense.
 
 State v. McKinnon
 
 ,
 
 306 N.C. 288
 
 , 298,
 
 293 S.E.2d 118
 
 , 125 (1982). This Court reviews a trial court's denial of a defendant's motion to dismiss
 
 de novo
 
 .
 
 State v. Smith
 
 ,
 
 186 N.C.App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007) (citation omitted).
 

 B. Analysis
 

 Defendant asserts the wielded knife must have been opened with an exposed blade to satisfy the dangerous weapon element of the crime of robbery with a dangerous weapon. We disagree.
 

 *125
 
 A dangerous weapon is any article, instrument, or substance that is likely to produce either death or great bodily harm.
 
 State v. Marshall
 
 ,
 
 188 N.C.App. 744
 
 , 749,
 
 656 S.E.2d 709
 
 , 713,
 
 disc. review denied
 
 ,
 
 362 N.C. 368
 
 ,
 
 661 S.E.2d 890
 
 (2008). "Whether an instrument can be considered a dangerous weapon depends upon the nature of the instrument, the
 
 manner in which defendant used it or threatened to use it
 
 , and in some cases the
 
 victim's perception
 
 of the instrument and its use."
 
 State v. Peacock
 
 ,
 
 313 N.C. 554
 
 , 563,
 
 330 S.E.2d 190
 
 , 196 (1985) (emphasis supplied). The conduct of Defendant and the victim's perception are factors as relevant as the actual weapon used in the altercation.
 
 Id
 
 .
 

 *459
 
 This Court has repeatedly addressed what constitutes a dangerous weapon in North Carolina.
 
 See
 

 State v. Blair
 
 ,
 
 181 N.C.App. 236
 
 ,
 
 638 S.E.2d 914
 
 (upholding robbery with a dangerous weapon conviction where victim did not see the defendant's knife when defendant took his wallet, but a police officer saw defendant verbally threaten victim while holding the wallet and knife),
 
 disc. review denied,
 

 361 N.C. 570
 
 ,
 
 650 S.E.2d 815
 
 (2007) ;
 
 State v. Williams
 
 ,
 
 335 N.C. 518
 
 ,
 
 438 S.E.2d 727
 
 (1994) (holding a jury can infer danger or threat to life and find defendant guilty of robbery with a dangerous weapon where defendant had his hand in his pocket pointing toward victims, appearing to his victims to be a firearm during the robbery).
 

 While an issue of first impression in this Court, courts in other jurisdictions have ruled closed knives used in the commission of a robbery satisfy the dangerous weapon element. The Georgia Court of Appeals held a gesture toward another individual with an unopened knife during the commission of a robbery is sufficient to satisfy the element of a dangerous weapon.
 
 Alford v. State
 
 ,
 
 204 Ga.App. 14
 
 , 15,
 
 418 S.E.2d 397
 
 , 398 (1992). Similarly, the Texas Court of Appeals held an unopened knife could be "legally sufficient to support a conviction" for aggravated robbery based on evidence that, while in an attempt to commit theft, the defendant "placed [the victim] in fear of imminent serious bodily injury or death, and during the course of that attempt, exhibited an unopened knife that, in the manner of its use or intended use, was capable of causing serious bodily injury or death."
 
 Blanson v. State
 
 ,
 
 107 S.W.3d 103
 
 , 106 (Tex. App. 2003). Both cases rely on the manner and conduct in which the respective defendants displayed the knives.
 
 Id
 
 .,
 
 Alford
 
 ,
 
 204 Ga.App. at 15
 
 ,
 
 418 S.E.2d at 398
 
 .
 

 Based on precedents from our Courts, as well as persuasive authority in other jurisdictions, we conclude Defendant's brandishing and use of the knife satisfied the element of a dangerous weapon. The manner and circumstances in which Defendant displayed the knife alludes to its purpose: Defendant yelled "I will kill you," attempted to push past Mr. Pate, removed the knife from his pocket and brandished it when Mr. Pate mentioned police involvement.
 

 We hold the unopened knife was a dangerous weapon when Defendant threatened to use it to cause great bodily harm or death. Sufficient evidence shows Defendant not only possessed a knife while committing the theft, he also removed it from his pocket and wielded it with dire threats when Mr. Pate attempted to call the police.
 

 *460
 
 Defendant also argues the State presented insufficient evidence tending to show Mr. Pate's life was "endangered or threatened" as required by
 
 N.C. Gen. Stat. § 14-87
 
 (2015). The State must present "evidence that the defendant endangered or threatened the life of the victim by possession of [the] weapon, aside from the mere fact of the weapon's presence."
 
 State v. Gibbons
 
 ,
 
 303 N.C. 484
 
 , 490,
 
 279 S.E.2d 574
 
 , 578 (1981).
 

 While Mr. Pate was attempting to disarm him, Defendant threatened, "I will kill you. I will kill you." Mr. Pate testified he felt afraid "when the knife came out" of Defendant's pocket. The State's evidence clearly shows more than mere possession of a dangerous weapon. Reviewed in the light most favorable to the State, this evidence tends to show Mr. Pate was afraid his life was endangered by Defendant's actions and threats.
 

 Id.
 

 Defendant's argument is overruled.
 

 *126
 

 IV. Motion to Continue and Motion for Substitute Counsel
 

 A. Standard of Review
 

 A motion to continue generally rests solely within the trial court's discretion and is reviewable on appeal only for an abuse of discretion.
 
 State v. Thomas,
 

 294 N.C. 105
 
 , 111,
 
 240 S.E.2d 426
 
 , 432 (1978). However, "[d]ue process requires that every defendant be allowed a reasonable time and opportunity to investigate and produce competent evidence, if he can, in defense of the crime [for] which he stands charged."
 
 State v. Baldwin
 
 ,
 
 276 N.C. 690
 
 , 698,
 
 174 S.E.2d 526
 
 , 531 (1970). When the motion to continue is based on a constitutional right, "the question presented is one of law and not of discretion and is reviewable."
 
 State v. Harris
 
 ,
 
 290 N.C. 681
 
 , 686,
 
 228 S.E.2d 437
 
 , 440 (1976).
 

 B. Analysis
 

 In arguing his motion to continue, Defendant's attorney, Mr. Patton, asserted lack of adequate time to prepare, due to Defendant's incarceration in Catawba County from April to early June, and counsel's own illnesses during April through June. Mr. Patton was appointed to represent Defendant on 22 December 2014. Mr. Patton indicated he and Defendant had no communication from 10 March 2015 to 13 July 2015, when the case was called for trial. Mr. Patton also stated he underwent rotator cuff surgery on 10 April 2015 and did not return to work until the week of 18 May 2015.
 

 Mr. Patton also informed the trial court he had tried a large criminal case during the week of 8 June and re-entered the hospital on 14 June 2015. Mr. Patton indicated the "antibiotic treatment" he received in the hospital "had a very severe effect" on him and that he "had not had
 
 *461
 
 many good days since then." He informed the trial court he was unable to return to work until 29 June 2015, approximately two weeks prior to trial.
 

 On the morning of trial, Defendant informed counsel he had two witnesses "that could come to court for him." Defendant also informed counsel that morning that he had prior contact with the prosecuting witness.
 

 Criminal defendants are constitutionally guaranteed "a fair trial and a competent attorney."
 
 Engle v. Isaac,
 

 456 U.S. 107
 
 , 134,
 
 102 S.Ct. 1558
 
 , 1575,
 
 71 L.Ed.2d 783
 
 , 804 (1982). "To establish a constitutional violation, a defendant must show that he did not have ample time to confer with counsel and to investigate, prepare and present his defense."
 
 State v. Tunstall
 
 ,
 
 334 N.C. 320
 
 , 329,
 
 432 S.E.2d 331
 
 , 337 (1993).
 

 Defendant must meet a two prong test to establish counsel's assistance was so defective to require reversal of a conviction.
 
 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 , 687,
 
 104 S.Ct. 2052
 
 , 2064,
 
 80 L.Ed.2d 674
 
 , 693 (1984). "First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show the deficient performance prejudiced the defense."
 
 Id
 
 .
 

 Under our analysis we presume, without deciding, Defendant may meet the first prong to show counsel's representation of Defendant was deficient due to counsel's illnesses, his failure to speak to Defendant between March 2015 and 13 July 2015, counsel's recent knowledge of the potential defense witnesses, and the alleged prior contact with the prosecution's witness.
 

 Under
 
 Strickland
 
 , this Court must determine whether Defendant was prejudiced due to counsel's deficient performance.
 
 State v. Thompson
 
 ,
 
 359 N.C. 77
 
 , 115,
 
 604 S.E.2d 850
 
 , 876. In order to establish prejudice "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."
 
 Strickland
 
 ,
 
 466 U.S. at 694
 
 ,
 
 104 S.Ct. at 2068
 
 ,
 
 80 L.Ed.2d at 698
 
 .
 

 "[W]hen [a] Court reviews ineffective assistance of counsel claims on direct appeal and determines that they have been brought prematurely, we dismiss those claims without prejudice, allowing defendant to bring them pursuant to a subsequent motion for appropriate relief in the trial court."
 
 Thompson
 
 ,
 
 359 N.C. at 123
 
 ,
 
 604 S.E.2d at 881
 
 .
 

 The factual record before us is insufficient to allow us to determine whether Defendant was prejudiced. No testimony or other information
 
 *127
 

 *462
 
 reveals what Defendant's proposed witnesses would have testified to, what relationship Defendant had with the prosecution's witness, or what specifically Mr. Patton was unable to master or present at trial due to his illnesses. We dismiss Defendant's appeal of the denial of a continuance without prejudice. Defendant may review procedures to develop a factual record surrounding the trial court's denial of his motion to continue and appointment of substitute counsel before the superior court.
 

 V. Conclusion
 

 We hold the trial court properly submitted the charge of robbery with a dangerous weapon to the jury and find no error. We dismiss Defendant's argument regarding the trial court's denial of his motion to continue and for appointment of substitute counsel without prejudice.
 

 NO ERROR IN PART. DISMISSED WITHOUT PREJUDICE IN PART.
 

 Judges BRYANT and INMAN concur.